UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 10-61126-CIV-COHN/SELTZER

NADIA N. HEMMINGS,

        Plaintiff,

v.

KEN JENNE, former Sheriff, and AL LAMBERTI,
current Sheriff of Broward County, Florida,
in their individual and official capacity;
ERIC M. FERBER, in his
individual and official capacity,

        Defendants.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

    **THIS CAUSE** is before the Court on Defendant Sheriff Al Lamberti's Motion to

Dismiss With Incorporated Memorandum of Law [DE 12] ("Motion to Dismiss").  The

Court has considered the Motion to Dismiss, Plaintiff's Memorandum in Opposition [DE

14] ("Opposition"), Sheriff Lamberti's Reply [DE 17] ("Reply"), the record in this case,

and is otherwise advised in the premises.

### I. BACKGROUND

    On May 28, 2010, Plaintiff Nadia N. Hemmings brought this action in the

Seventeenth Judicial Circuit Court, Broward County Florida, for a variety of claims

arising out of an alleged sexual assault by Defendant Deputy Eric M. Ferber, a Broward

County Sheriff's Office ("BSO") Child Protection Investigator.  See DE 1.  The case was

removed to this Court on July 1, 2010.  See id.  Ms. Hemmings then filed her Amended

Complaint [DE 7] on July 15, 2010.

The Amended Complaint states that Deputy Ferber was assigned to investigate a domestic dispute between Ms. Hemmings and her male domestic partner in June 2006. Am. Compl. ¶ 15. Ms. Hemmings claims that between June 1, 2006 and August 24, 2006, while on duty and dressed in his BSO uniform, Deputy Ferber forced her to perform oral sex on him on several occasions and repeatedly coerced her into other sexual contacts. Id. ¶¶ 16, 18-20. He allegedly "continued to harass and intimidate Ms. Hemmings and attempted to force her to have sex with him." Id. ¶ 21. According to the Amended Complaint, Deputy Ferber "told Ms. Hemmings that he had the ability to remove her two young children from her custody if she did not engage in sexual acts with him." Id. ¶ 17. Based on these allegations, Ms. Hemmings brings six claims: violation of 42 U.S.C. § 1983 by the Sheriff in his official capacity (Count One), violation of 42 U.S.C. § 1983 by Deputy Ferber (Count Two), battery (Count Three), assault (Count Four), "negligence/infliction of emotional distress" (Count Five), and negligent hiring/training/retention/supervision against the Sheriff in his official capacity (Count Six). On July 26, 2010, Sheriff Lamberti filed his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a motion to dismiss lies for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In order to state a claim, Federal Rule of Civil Procedure 8(a)(2) requires "a short and

2

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of [her] 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570).

At this stage in the litigation, the Court must consider the allegations in the Complaint as true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994). Nevertheless, the Court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993).

### III. ANALYSIS

Sheriff Lamberti moves to dismiss the counts brought against him as Sheriff. These counts include: violation of 42 U.S.C. § 1983 by the Sheriff in his official capacity (Count One), battery (Count Three), assault (Count Four), "negligence/infliction of emotional distress" (Count Five), and negligent hiring/training/retention/supervision against the Sheriff in his official capacity (Count Six).

3

## A. Violation of 42 U.S.C. § 1983 by Sheriff in His Official Capacity (Count One)

In Count One, Ms. Hemmings alleges that the Sheriff violated her constitutional rights pursuant to § 1983. Am. Compl. ¶ 25. Specifically, Ms. Hemmings states that the "Sheriff has deprived and infringed [her] liberty and/or property interests including in violation of the Fourth and Fourteenth Amendments to the United States Constitution including, due process, bodily integrity and/or equal protection." Id. ¶ 27.

To state a § 1983 cause of action, a plaintiff must allege both (1) that someone deprived her of a federal right, and (2) that the person who deprived her of that right acted under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). An official who is the final policymaking authority may render a municipality liable under § 1983, Hill v. Clifton, 74 F.3d 1150, 1152 (11th Cir. 1996), and in Florida, the Sheriff is the policymaker and final authority for his agency, Lucas v. O'Loughlin, 831 F.2d 232, 235 (11th Cir. 1987), cert. denied, 485 U.S. 1035 (1988). Accordingly, Sheriff Lamberti may render the Sheriff's Office liable if Ms. Hemmings has alleged both prongs of the § 1983 cause of action. The parties do not dispute that Deputy Ferber was acting under color of state law during the events in question; rather, the parties' contentions center on whether the Sheriff deprived Ms. Hemmings of a federal right.

To hold a municipality liable for violation of a federal right under § 1983, the plaintiff cannot rely on a *respondeat superior* theory. Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 691 (1978). The plaintiff must establish a direct causal connection between a custom, policy, practice, or procedure and the alleged constitutional deprivation. Bd. of Cty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 403-04

4

(1997); see also Monell, 436 U.S. at 691-92 (holding that Congress did not intend for liability to attach to government entities when causation was absent). The requisite causation will be present if the plaintiff demonstrates that "through its *deliberate* conduct, the municipality was the 'moving force' behind the alleged injury." Brown, 520 U.S. at 403; see also Monell, 436 U.S. at 694.

Here, the Amended Complaint is devoid of any facts regarding the Sheriff's customs, policies, practices, or procedures relating to Ms. Hemmings' constitutional deprivation. Though Ms. Hemmings includes facts regarding Deputy Ferber's actions, her Amended Complaint neither describes any of the Sheriff's customs, policies, practices, or procedures, nor mentions how any such custom, policy, practice, or procedure caused her injuries. The allegations regarding the Sheriff include such broad statements as "Sheriff has deprived and infringed Ms. Hemmings['] liberty and/or property interests including in violation of the Fourth and Fourteenth Amendments to the United States Constitution including, due process, bodily integrity and/or equal protection," Am. Compl. ¶ 27, and "[t]he above described constitutional deprivations of Plaintiff occurred pursuant to Sheriff's customs, acts, official policies, and/or widespread practices," id. ¶ 29. In opposing the dismissal of this claim, Ms. Hemmings relies on Johnson v. Cannon, 947 F. Supp. 1567 (M.D. Fla. 1996), where a plaintiff survived a motion to dismiss in another case based on a § 1983 claim for a sheriff's liability for a deputy's actions in a sexual assault. However, the plaintiff in Johnson alleged that the sheriff had received complaints about the deputy's improper conduct in the past and had failed to act on those complaints. Id. at 1570. In contrast, Ms. Hemmings mentions no complaints or documentation of other instances when Deputy Ferber acted

5

improperly in the past. Instead, she states generally, "Sheriff knew about the above described actions and/or failed to stop them." Am. Compl. ¶ 38. Though a complaint "does not need detailed factual allegations," Twombly, 550 U.S. at 545, the general and non-specific allegations in Ms. Hemmings' Amended Complaint do not meet her obligation to provide the grounds of her entitlement to relief. Ms. Hemmings provides mere "labels and conclusions." See id. Because such a "formulaic recitation of the elements of a cause of action will not do," id., the Court will dismiss the § 1983 claim against the Sheriff for failure to state a claim upon which relief can be granted.

## B. Battery, Assault, and "Negligence/Infliction of Emotional Distress" (Counts Three, Four, and Five)

In Counts Three, Four, and Five, Ms. Hemmings brings battery, assault, and common law "negligence/infliction of emotional distress" claims against all defendants. She implicates the Sheriff under a *respondeat superior* theory. Ms. Hemmings is correct when she notes in her Opposition that the mere fact that Deputy Ferber's acts were intentional does not shield the Sheriff from liability, see, e.g., Richardson v. City of Pompano Beach, 511 So. 2d 1121, 1122 (Fla. Dist. Ct. App. 1987), but Sheriff Lamberti does not dispute that Deputy Ferber's acts were intentional. Instead, the parties' dispute centers on whether Deputy Ferber's sexual battery and sexual assault fall within the scope of his employment.

Florida law allows for the imposition of vicarious liability on a governmental entity for the intentional torts of its employee, but only when the tort is committed within the scope of employment. Fla. Stat. § 768.28(1) (2006); Lawrence v. Dunbar, 919 F.2d

6

1525, 1528 (11th Cir. 1990); Roth v. Lawrence, 2010 WL 2162900, at *1 (S.D. Fla. 2010); see also Richardson, 511 So. 2d at 1122. The Eleventh Circuit and the Florida Supreme Court define "within the scope of employment" somewhat differently. According to the Eleventh Circuit, an act is within the scope of employment if the act (1) is the kind of act the employee is employed to perform, (2) was motivated, at least in part, by a purpose to serve the master, and (3) occurs substantially within the time and space of the employment. Lawrence, 919 F.2d at 1528 (citing Rabideau v. State, 391 So. 2d 283, 284 (Fla. Dist. Ct. App. 1980), aff'd, 409 So. 2d 1045 (Fla. 1982)). According to the Florida Supreme Court, an act is within the scope of employment if "the employee is acting within the apparent scope of his authority . . . to serve the interests of the employer," even if the act was not actually necessary or appropriate to serve the employer's interests. Stinson v. Prevatt, 84 Fla. 416, 418-19 (1922). Thus, the Eleventh Circuit focuses on the kind of conduct involved in the act while the Florida Supreme Court focuses on the employee's motivation behind the act. Roth, 2010 WL 2162900, at *1. Additionally, "[t]he question whether a tort committed by an agent is within the scope of his employment is normally to be determined by the jury, except in cases . . . in which the jury could reach only one conclusion that could be sustained." City of Green Cove Springs v. Donaldson, 348 F.2d 197, 202 (5th Cir. 1965).

Under both the Eleventh Circuit approach and the Florida Supreme Court approach, the jury could reach only one conclusion that could be sustained here: that Deputy Ferber's alleged sexual battery and sexual assault falls outside the scope of his employment. According to the Amended Complaint, Deputy Ferber forced Ms. Hemmings to perform oral sex on him on several occasions, repeatedly coerced her

7

into other sexual contacts, harassed and intimidated her, and attempted to force her to have sex with him. Am. Compl. ¶¶ 16, 18, 19, 21. In addition, he allegedly "told Ms. Hemmings that he had the ability to remove her two young children from her custody if she did not engage in sexual acts with him." Id. ¶ 17.

Applying the Eleventh Circuit test, these are not the acts Deputy Ferber was employed to perform, see Lawrence, 919 F.2d at 1528, as a BSO Child Protection Investigator is not hired to sexually assault mothers. Further, Deputy Ferber's motivation was not to serve his employer, see id., because nothing in his sexual misconduct was meant to further the interests of the Sheriff's Office. Though his actions occurred substantially within the time and space of his employment in that "Deputy Ferber was on duty at the time of these activities and was dressed in his assigned BSO uniform," Am. Compl. ¶ 20, these facts do not automatically place his actions within the scope of his employment. Mason v. Fla. Sheriff's Self-Ins., 699 So. 2d 268, 270 (Fla. Dist. Ct. App. 1997); see also Keen v. Fla. Sheriff's Self-Ins., 962 So. 2d 1021, 1023 (Fla. Dist. Ct. App. 2007) (insurance coverage case finding officer's sexual assault was outside scope of employment even though he was wearing a uniform). Instead, like the deputy in Mason, who arrived in uniform at the plaintiff's home with an arrest warrant for her, but said he would pretend he could not find her if she had sexual intercourse with him, id. at 269-70, Deputy Ferber arrived in uniform at Ms. Hemmings' home and proposed that she engage in sexual acts with him because he had the ability to remove her children from her custody. Just as the mere fact that the Mason deputy was in uniform did not render his actions within the scope of his employment, 699 So. 2d at 270, the fact that Deputy Ferber was in uniform does not

8

render his actions within the scope of his employment either. Further, in Mason, as here, just because the deputy was on duty, "in no way did he have the authority to use his power to coerce sex." Mason, 699 So. 2d at 270. Therefore, because Deputy Ferber's sexual acts were not acts he was employed to perform, because his motivation was not to serve his employer, and because the fact that he acted within the time and space of his employment was not enough to render the acts within the scope of his employment, Ms. Hemmings' Amended Complaint fails the Eleventh Circuit test. See Lawrence, 919 F.2d at 1528.

Ms. Hemmings' Amended Complaint similarly fails the Florida Supreme Court test because even if Deputy Ferber was acting within the apparent scope of his authority, his motivation in sexually assaulting Ms. Hemmings was not to serve the Sheriff. See Stinson, 84 Fla. at 418-19. Rather, like Donaldson, where an officer "stepped aside from his employment to accomplish his own, rather than the City's purpose," 348 F.2d at 203, Deputy Ferber acted on his own accord during his sexual misconduct. Because "an employer is not liable for the employee's torts if the employee has stepped aside from his employment or commits the tort to further some purpose of his own," Blount v. Sterling Healthcare Group, Inc., 934 F. Supp. 1365, 1372 (S.D. Fla. 1996), the Sheriff is not liable for Deputy Ferber's acts here. Accordingly, Deputy Ferber's actions were not within the scope of his employment, and so Ms. Hemmings' respondeat superior theory must fail.

Additionally, Sheriff Lamberti's Motion to Dismiss mentions that Counts Three, Four, and Five of the Amended Complaint are "based on state law, but include a prayer for attorney's fees based on 42 U.S.C. § 1988, which is inapplicable to state cases."

9

Mot. ¶ 7. Ms. Hemmings' Opposition admits that this "was an oversight and should be stricken." Opp'n at 7. Therefore, the Court will strike the claim for attorney's fees in the state law tort counts.

## C. Negligent Hiring/Training/Retention/Supervision Against Sheriff in His Official Capacity (Count Six)

In Count Six, Ms. Hemmings alleges that the Sheriff was negligent in hiring, training, retaining, and supervising his employees. Evaluating a negligence claim against a governmental entity for the purposes of a motion to dismiss is a two-step analysis. Lewis v. City of St. Petersburg, 260 F.3d 1260, 1262 (11th Cir. 2001); Kaisner v. Kolb, 543 So. 2d 732, 734 (Fla. 1989). First, the Court analyzes whether the plaintiff has alleged circumstances that would subject a private citizen to liability under Florida law. Lewis, 260 F.3d at 1262; Kaisner, 543 So. 2d at 734. Second, the Court analyzes whether the plaintiff has alleged actions that are governmentally discretionary in nature, and thereby barred by the discretionary act exception to the government's waiver of sovereign immunity. Lewis, 260 F.3d at 1262-63.

Under the first step of the analysis, when evaluating whether Ms. Hemmings has alleged circumstances that would subject a private citizen to liability under Florida law, the Court must look for allegations that the Sheriff owed Ms. Hemmings a duty of care, that he breached that duty of care, and that the breach caused Ms. Hemmings to suffer damages. Lewis, 260 F.3d at 1262; Paterson v. Deeb, 472 So. 2d 1210, 1214 (Fla. Dist. Ct. App. 1985). An employer is liable in Florida tort law "for reasonably

10

foreseeable damages resulting from the negligent training of its employees." Lewis, 260 F.3d at 1265 (citing McFarland & Son, Inc. v. Basel, 727 So. 2d 266 (Fla. Dist. Ct. App. 1999)). Here, the Amended Complaint alleges that the Sheriff had the duty "to inquire into the work environment, to supervise agents and employees of Sheriff, . . . to investigate and discipline any employee if such employee failed to adhere to appropriate and legal conduct in the workplace, [and . . .] to ensure that [Ms. Hemmings] was free from tortious conduct." Am. Compl. ¶¶ 88, 90. The Amended Complaint then states that the "Sheriff breached that duty," id. ¶ 89, and that Ms. Hemmings suffered physical and emotional injuries as a result of the breach, id. ¶ 97. Taking Ms. Hemmings' allegations as true and viewing them in the light most favorable to her, the Sheriff owed her a duty, which he breached, and the breach caused her damages. Accordingly, the Sheriff's conduct in performing the alleged actions would subject a private citizen to liability for negligence under Florida law. See Lewis, 260 F.3d at 1262; Paterson, 472 So. 2d at 1214. Therefore, though Ms. Hemmings does not include great factual detail here, she alleges enough to survive a motion to dismiss based on the first step of the analysis. See Lewis, 260 F.3d at 1262; Kaisner, 543 So. 2d at 734.

Under the second step of the analysis, the Court must evaluate whether the alleged actions are governmentally discretionary in nature and thus barred by sovereign immunity. Lewis, 260 F.3d at 1262-63. Under Commercial Carrier Corp. v. Indian River County, 371 So. 2d 1010, 1020 (Fla. 1979), the test for whether an action is discretionary or operational is fact-intensive. Id. (laying out four-part factual test); see also Napier ex rel. Napier v. Fla. Dep't of Corr., 2010 WL 2427442, at *4-5 (S.D. Fla.

June 16, 2010). Applying the fact-intensive analysis, courts have historically considered training a discretionary function. See, e.g., Lewis, 260 F.3d at 1266; Cook ex rel. Estate of Tessier v. Sheriff of Montroe Cnty., Fla., 402 F.3d 1092, 1117 (11th Cir. 2005). However, courts have considered hiring, retention, and supervision either discretionary or operational, depending on the circumstances. See, e.g., Cook, 402 F.3d at 1117; Napier, 2010 WL 2427442, at *5; Vaden v. Campbell, 2009 WL 1919474, at **3-4 (N.D. Fla. July 2, 2009); Slonin v. City of W. Palm Beach, Fla., 896 So. 2d 883, 883 (Fla. Dist. Ct. App. 2005); Storm v. Town of Ponse Inlet, 866 So. 2d 713, 719 (Fla. Dist. Ct. App. 2004); Wills v. Dade Cnty. Sch. Bd., 411 So. 2d 245, 246 (Fla. Dist. Ct. App. 1982).

## 1. Negligent Training

Claims for negligent training are typically barred by sovereign immunity because a "decision regarding how to train . . . officers and what subject matter to include in the training is clearly an exercise of governmental discretion regarding fundamental questions of policy and planning." Lewis, 260 F.3d at 1267. Ms. Hemmings claims the Sheriff was negligent because he failed to train Deputy Ferber and other employees. Am. Compl. ¶¶ 92, 97. The Sheriff's decisions regarding training are discretionary in that they are policy and planning questions, and not mere operational decisions. See Lewis, 260 F.3d at 1266 (finding decision regarding how to train police officers was discretionary); see also Cook, 402 F.3d at 1117 (holding Sheriff's training of employees to be discretionary function under Florida law). Thus, Ms. Hemmings' negligent training claim relates to a discretionary function, and is thereby barred by sovereign immunity. Because this is an instance where "no construction of the factual allegations will support

12

the cause of action," Marshall, 992 F.2d at 1174, the Court will dismiss the negligent training claim.

## 2. Negligent Hiring, Retention, and Supervision

Though negligent training claims are typically barred by sovereign immunity, negligent hiring, retention, and supervision claims are not always barred by sovereign immunity, because these functions are sometimes deemed operational rather than discretionary. Compare Vaden, 2009 WL 1919474, at **3-4 (no sovereign immunity barring retention and supervision claims), Slonin, 896 So. 2d at 883 (same), and Wills, 411 So. 2d at 246 (no sovereign immunity barring hiring and retention claims), with Napier, 2010 WL 2427442, at *5 (declining to dismiss retention claim at motion to dismiss stage), Storm, 866 So. 2d at 719 (sovereign immunity barring retention claim), and Cook, 402 F.3d at 1117 (sovereign immunity barring supervision claim).

Ms. Hemmings claims the Sheriff was negligent in his failure to "supervise . . . Deputy Ferber and/or his supervisors/managers employees," Am. Compl. ¶ 92, in his failure to "take appropriate remedial action after Sheriff knew, or should have known, of the continuing tortious conduct directing toward Ms. Hemmings," id., and in generally hiring, supervising, and retaining Deputy Ferber and other employees, id. ¶ 97. Depending on the facts, the Sheriff's hiring, retention, and supervision decisions could be operational. For instance, in Vaden, a Sheriff's decision to leave an employee in charge of a program after the employee had shown himself to be inappropriately sexually aggressive toward participants was determined to be operational. 2009 WL 1919474, at *3. There, as here, the "critical issue [was] not what the policy should have been, but what the Sheriff knew or should have known." Id. At this point, the Court

13

does not have the facts necessary to determine whether the Sheriff's decisions relating to hiring, retention, or supervision were actually operational or discretionary. Therefore, the Court cannot yet determine whether sovereign immunity bars Ms. Hemmings' negligent hiring, retention, and supervision claims, and thus will not dismiss these claims at this stage.

## IV. CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.  Defendant Sheriff Al Lamberti's Motion to Dismiss is **GRANTED in part and DENIED in part**:

    a.  Count One (Violation of 42 U.S.C. § 1983 by Sheriff in His Official Capacity) is **DISMISSED without prejudice**;

    b.  Count Three (Battery) is **DISMISSED without prejudice** as to the Sheriff;

    c.  Count Four (Assault) is **DISMISSED without prejudice** as to the Sheriff;

    d.  Count Five ("Negligence/Infliction of Emotional Distress") is **DISMISSED without prejudice** as to the Sheriff;

    e.  The Negligent Training claim under Count Six is **DISMISSED without prejudice**;

    f.  The Motion to Dismiss is **DENIED** with respect to the Negligent Hiring, Retention, and Supervision claims under Count Six;

2.  Ms. Hemmings' claim for attorneys fees in Counts Three, Four, and Five is **STRICKEN**;

14

3.      Ms. Hemmings may file a Second Amended Complaint by **October 26, 2010**, or

she may file a Notice electing to proceed against the Sheriff solely on the

Negligent Hiring, Retention, and Supervision claims under Count Six by **October**

**26, 2010**. Defendant's Answer will be due 15 calendar days from the filing of a

Second Amended Complaint or a Notice.

        **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County,

Florida, on this /2 day of October, 2010.

                                        **JAMES I. COHN**
                                        **UNITED STATES DISTRICT JUDGE**

Copies provided to:
Counsel of record via CM/ECF